IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| SE PROPERTY HOLDINGS, LLC, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| vs. | ) | CIVIL ACTION NO. 1:15-423-CG-C |
| | ) | |
| MICHAEL TERRY ADAMS, | ) | |
|     Defendants. | ) | |

## ORDER

This matter is before the Court on Plaintiff SE Property Holdings, LLC's ("SEPH") motion for entry of default judgment (Doc. 20) against Defendant Michael Terry Adams ("Adams"). Having considered the record as a whole, the Court has concluded a hearing is unnecessary and will consider the motion purely on the record before it. For the reasons stated below, the Court deems it proper to **GRANT** the motion **in part**.

## I. Background

On October 8, 2003, Vision Bank—now SEPH[1]—loaned Adams $157,000.00 through Loan Number 32387 (the "Loan"). (*See* Doc. 20-1, ¶ 4). Originally, the Loan was scheduled to mature on October 7, 2008, but Adams and SEPH agree to extend the maturity date to October 7, 2013. *See id.* at ¶¶ 4–5. Thereafter, Adams defaulted on certain amounts due under the Loan. *Id.* at ¶ 6. In February 2015, after seeking advice from its attorneys, SEPH

---

[1] "SEPH is the successor-in-interest to Vision Bank pursuant to a merger on or about February 16, 2012." (Doc. 20-1, ¶ 2).

entered into a Forbearance Agreement, but Adams still "failed to pay the Indebtedness under the Loan." *Id.* at ¶¶ 8–9.

On August 3, 2015, SEPH demanded payment in full on the Loan, but Adams failed to cure the default. *Id.* at ¶¶ 11–12. Thereafter, SEPH initiated a suit against Adams in this Court[2] and foreclosed on the property securing the Loan on October 16, 2016. *Id.* at ¶¶ 13–14. On that day, Adams filed a voluntary Chapter 13 bankruptcy petition in the Southern District of Alabama, and the instant case was stayed. *Id.* at ¶ 15; *see also* Doc. 13. On February 24, 2016, the Bankruptcy Court granted SEPH's Motion for *Nunc Pro Tunc* Annulment of the Automatic Stay in that court to validate the foreclosure. (Doc. 20-1, ¶ 17). After the Bankruptcy Court dismissed Adams's case for failure to pay the proscribed Chapter 13 payment plan payments, SEPH initiated a suit in the Circuit Court of Baldwin County to eject Adams from the property. *Id.* at ¶¶ 17–18. The court entered the ejectment order on May 27, 2016. *Id.* at ¶ 19.

This case returned to the Court's active docket on January 25, 2017. (Doc. 19). SEPH seeks entry of default judgment to recover the deficiency on the Loan as well as attorneys' fees and costs. As of February 2, 2017, the outstanding balance on the Loan totals $55,871.28, plus accruing *per diem* interest. (*See* Doc. 20-1, ¶ 24; Doc. 20-2). This sum includes $43,889.18 in

---

[2] SEPH filed its suit in this Court on August 20, 2015. (Doc. 1). After Adams failed to appear or defend, SEPH sought entry of default from the Clerk (Doc. 9), which was entered against Adams on October 8, 2015 (Doc. 10).

principal, $10,280.89 in interest, $105.48 in late fees, $895.73 in force placed insurance, and $700.00 in appraisal fees. *Id*. SEPH also seeks reimbursement for its attorneys' fees and expenses in the amount of $44,863.43 for work performed and/or billed through January 31, 2017.[3] (*See* Doc. 20-1, ¶ 30; Doc. 20-4).

## II. Notice

This Court generally requires some notice be given to defendants between the time of the service of the summons and complaint and the entry of a default judgment. *See, e.g.*, *JP Morgan Chase Bank, N.A. v. Surek*, No. 11–263–KD–M, 2011 WL 5289254, at *2 (S.D. Ala. Nov. 4, 2011); *Penn. Nat'l Mut. Cas. Ins. Co. v. King*, No. 11–577–WS–C, 2012 WL 1712670, at *2 n.4 (S.D. Ala. May 15, 2012). At the outset, the Court is satisfied Adams had notice of the default proceedings. He was served with the summons and the Complaint in August 2015. (Doc. 8). The summons clearly stated, "If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint." (Doc. 4). Moreover, the Clerk entered default against Adams on October 8, 2015, approximately seventeen months before this entry of default judgment. (*See* Doc. 10). Considering the length of time of the proceedings, including summons, entry of default, and a separate

---

[3] Of this amount, $1,819.30 has been labeled "Work in Progress," which indicates the work has been performed but has not yet been billed to SEPH. (*See* Doc. 20-3, ¶ 5).

bankruptcy proceeding, the Court finds Adams had sufficient notice of the instant proceedings.

## III. Analysis

In this Circuit, "there is a strong policy of determining cases on their merits[,] and we therefore view defaults with disfavor." *In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1295 (11th Cir. 2003); *see also Varnes v. Local 91, Glass Bottle Blowers Ass'n of U.S. and Canada*, 674 F.2d 1365, 1369 (11th Cir. 1982). Nonetheless, it is well established that a "district court has the authority to enter default judgment for failure . . . to comply with its order or rules of procedure." *Wahl v. McIver*, 773 F.2d 1169, 1174 (11th Cir. 1985).

The Federal Rules of Civil Procedure establish a two-part process for obtaining a default judgment. FED. R. CIV. P. 55. If "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." FED. R. CIV. P. 55(a). After default has been entered, if the "claim is for a sum certain or a sum that can be made certain by computation," the clerk must enter default judgment. *Id.* at 55(b)(1). In all other circumstances, such as here, "the party must apply to the court for a default judgment." *Id.* at 55(b)(2). Importantly, a "default judgment must not differ in kind from, or exceed amount in, what is demanded in the pleadings." *Id.* at 54(c).

4

Rule 55(b)(2) also provides the Court may conduct a hearing to enter a judgment if the Court needs to "conduct an accounting," "determine the amount of damages," "establish the truth of any allegation by evidence," or "investigate any other matter." FED. R. CIV. P. 55(b)(2). Upon review of the docket, the motion for default judgment, and supporting evidence, the Court finds a hearing is unnecessary. *Securities and Exchange Comm'n v. Smyth*, 420 F.3d 1225, 1231–2 & n. 13 (11th Cir. 2005) (where "all essential evidence is already of record," a hearing is generally not required).

The Eleventh Circuit has held, although "a default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover, a defaulted defendant is deemed to admit the plaintiff's well-pleaded allegation of fact. The defendant, however, is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Tyco Fire & Sec., LLC v. Alcocer*, 218 F. A'ppx 860, 863 (11th Cir. 2007) (per curiam) (citations and internal quotations admitted). Moreover, "before entering a default judgment for damages, the district court must ensure that the well-pleaded allegations of the complaint . . . actually state a cause of action and that there is a substantive, sufficient basis in the pleadings for the particular relief sought." *Id.* (emphasis omitted). When assessing damages in connection with a default judgment, the Court has "an obligation to assure that there is a legitimate basis for any damage award it enters." *Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2007). Additionally, SEPH must

5

establish a "prima facie liability case" against Adams. *Pitts ex rel. Pitts v. Seneca Sports, Inc.*, 321 F. Supp. 2d 1353, 1357 (S.D. Ga. 2004) (citations omitted).

**A. Claims Asserted**

SEPH asserted one claim against Adams for breach of contract. (Doc. 1). Under Alabama law, loan documents are governed under contract law. *See Penick v. Most Worshipful Prince Hall Grande Lodge F & A M of Alabama, Inc.*, 46 So. 3d 416, 428 (Ala. 2010) (construing terms of a mortgage, notes, and modification agreement). In order to prevail on its claim, SEPH must establish the following breach of contract elements: "(1) a valid contract binding the parties; (2) the plaintiff's performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages." *Shaffer v. Regions Fin. Corp.*, 29 So. 3d 872, 880 (Ala. 2009); *Vision Bank v. Algernon Land Co., L.L.C.*, 2011 WL 1380062, at *7 (S.D. Ala. Apr. 12, 2011).

In light of the foregoing principles, the Court has reviewed the Complaint and is satisfied SEPH has established a viable claim for breach of contract. SEPH and Adams entered into a valid, binding contract in the initial mortgage agreement and the subsequent modifications thereof. SEPH clearly performed by loaning the funds to Adams, and Adams failed to perform when he defaulted on the loan repayment. Additionally, SEPH incurred damages, as explained below.

**B. Damages Sought**

"A judgment by default shall not be different in kind from or exceed in amount that prayed for in the demand for judgment." FED. R. CIV. P. 54(c).  In the instant case, the current motion seeks the same kinds of relief demanded in the complaint's prayer for relief, and because no amounts were specified in the complaint, the amounts currently sought to not exceed the amounts prayed for.  SEPH's requested default judgment thus does not violate Rule 54(c).

"While well-pleaded facts in the complaint are deemed admitted, plaintiff's allegations relating to the amount of damages are not admitted by virtue of default; rather, the court must determine both the amount and the character of damages." *Capitol Records v. Carmichael*, 508 F. Supp. 2d 1079, 1084 n.4 (S.D. Ala. 2007); *see also Philpot*, 317 F.3d at 1266 ("A court [on entering default judgment] has an obligation to assure that there is a legitimate basis for any damage award it enters . . . ."); *Adolph Coors Co. v. Movement Against Racism and the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985) (on default judgment, "[d]amages may be awarded only if the record adequately reflects the basis for award . . . ."); 10A Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 2688 at 58–59 (3rd ed. 1998) ("If the court determines that [the] defendant is in default, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.").  Thus, the mere granting of default judgment does not establish the plaintiff's entitlement to any quantum of damages.

SEPH submits it suffered damages from the unpaid loan and associated costs, including attorneys' fees and costs: $55,871.28 on the loan (including principal, interest, late fees, forced place insurance, and appraisal fees) and $44,863.43 in attorneys' fees and costs. (Doc. 20-1, ¶¶ 24, 30). In addition, SEPH seeks *per diem* interest, calculated from February 3, 2017 through the date of judgment, at $21.644 per day. (*See* Doc. 20-2, p. 2). To date, the additional interest amounts to $1,060.56 ($21.644 x 49 days = $1,060.56). As a matter of law, the Court **AWARDS** SEPH **$56,931.84** as the total damages for the unpaid loan and the additional *per diem* interest ($55,871.28 + $1,060.56 = $56,931.84). The Court will consider the reasonableness of the attorneys' fees and costs separately.

## C. Attorneys' Fees and Costs

### 1. Entitlement to Attorneys' Fees and Costs

In a diversity action where Alabama is the forum state, the Court applies the law of the State of Alabama to determine whether a party is entitled to fees and to resolve disputes as to the reasonableness of fees. *Kearney v. Auto-Owners Ins. Co.*, 713 F. Supp. 2d 1369, 1373 (M.D. Fla. 2010) (citing *Trans Coastal Roofing Co., Inc. v. David Boland, Inc.*, 309 F.3d 759, 760 (11th Cir. 2002)). Generally, Alabama follows the American rule for attorney fees, "which does not require a losing party to pay the attorney fees of the winning party . . . ." *Classroomdirect.com, LLC v. Draphix, LLC*, 992 So. 2d 692, 710 (Ala. 2008). This rule, however, is not without exception:

"'[A]ttorney fees may be recovered if they are provided for by . . . contract[.]'"

*Id.* (quoting *City of Bessemer v. McClain*, 957 So. 2d 1061, 1078 (Ala. 2006)).

In the original Loan document, the parties agreed to the following

provision:

> **COLLECTION COSTS AND ATTORNEY'S FEES** – I
> [Adams] agree to pay all costs of collection, replevin or
> any other or similar type of cost if I am in default. In
> addition, if you [SEPH] hire an attorney to collect this
> note, I also agree to pay any fee you incur with such
> attorney plus court costs (except where prohibited by law).
> To the extent permitted by the United States Bankruptcy
> Code, I also agree to pay the reasonable attorney's fees
> and cost you incur to collect this debt as awarded by any
> court exercising jurisdiction under the Bankruptcy Code.

(Doc. 1-1, p. 3). Under Alabama law, "[a] mortgagee . . . may recover the

attorney fees incurred in the enforcement of the mortgage where the

mortgage contractually imposes a duty on the mortgagor to pay those fees."

*Austin Apparel, Inc. v. Bank of Prattville*, 872 So. 2d 158, 166 (Ala. Civ. App.

2003). Because Adams defaulted on his Loan repayment and because SEPH

hired Phelps Dunbar to collect on the note, in addition to other actions, the

Court finds this provision authorizes the recovery of reasonable attorneys'

fees and costs.

## 2. Reasonableness of Fees

It is well-settled that "[t]he determination of whether [ ] attorney[s']

fee[s] [are] reasonable is within the sound discretion of the trial court . . . ."

*Kiker v. Probate Court of Mobile Cnty.*, 67 So. 3d 865, 867 (Ala. 2010)

(internal quotations and citation omitted).  In assessing the reasonableness of

an attorneys' fees request, courts generally apply the "lodestar" method to obtain an objective estimate of the value of an attorney's services. *Norman v. Housing Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988). The lodestar figure is calculated by multiplying the hours that each attorney reasonably worked by a reasonable rate of pay, defined as the prevailing market rate in the "legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 895–96 n. 11 (1984).  In this case, the relevant legal community is Mobile, Alabama. *See American Civil Liberties Union of Ga. v. Barnes,* 168 F.3d 423, 437 (11th Cir. 1999) (providing that "the 'relevant market' for purposes of determining the reasonable hourly rate for an attorney's services is the place where the case is filed") (citations omitted).  The party moving for fees bears the burden of establishing the "reasonableness" of the hourly rate and number of hours expended via specific evidence supporting the hours and rates claimed. *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983); *Barnes,* 168 F.3d at 427

When seeking attorneys' fees, the movant must not request fees for hours that are "excessive, redundant, or otherwise unnecessary" or request fees for unsuccessful claims. *Hensley,* 461 U.S. at 434–35.  When awarding attorneys' fee, "[c]ourts are not authorized to be generous with the money of others, and it is as much the duty of the courts to see that excessive fees and expenses are not awarded as it is to see that an adequate amount is

awarded." *Barnes*, 168 F.3d at 428. When a request for attorneys' fees is unreasonably high, the court may "conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut." *Bivins v. Wrap it Up, Inc.,* 548 F.3d 1348, 1350 (11th Cir. 2008). Likewise, where the rates or hours claimed seem excessive or lack the appropriate documentation, a court may calculate the award based on its own experience, knowledge, and observations. *See, e.g., Norman,* 836 F.2d at 1299. Notably, "[t]he court, either trial or appellate, is itself an expert on the question and may consider its own knowledge and experience concerning reasonableness and proper fees and may form an independent judgment either with or without the aid of witnesses." *Id.* at 1303 (citations omitted).

Further, the lodestar figure established by the reviewing court may be adjusted by consideration of various factors including the following:

> (1) the nature and value of the subject matter of the employment; (2) the learning, skill, and labor requisite to its proper discharge; (3) the time consumed; (4) the professional experience and reputation of the attorney; (5) the weight of his responsibilities; (6) the measure of success achieved; (7) the reasonable expenses incurred; (8) whether a fee is fixed or contingent; (9) the nature and length of a professional relationship; (10) the fee customarily charged in the locality for similar legal services; (11) the likelihood that a particular employment may preclude other employment; and (12) the time limitations imposed by the client or by the circumstances.

*Van Schaack v. AmSouth Bank, N.A.,* 530 So. 2d 740, 749 (Ala. 1988). *See also Pharmacia Corp. v. McGowan,* 915 So. 2d 549, 552–54 (Ala. 2004); *Lolley v. Citizens Bank,* 494 So. 2d 19 (Ala. 1986). These criteria are for purposes of

evaluating whether the attorneys' fees are reasonable but are not an exhaustive list of specific criteria that must be met. *Beal Bank, SSB v. Schilleci,* 896 So. 2d 395, 403 (Ala. 2004).

In support of its request for attorneys' fees, SEPH submitted the affidavit of one of its attorneys, I. Danielle Mashburn-Myrick, and the affidavit of Charles J. Fleming, a local attorney who reviewed the billing statements and provided a third-party opinion as to the reasonableness of the fees. (*See* Docs. 20-3, 20-5). Ms. Mashburn-Myrick testified Phelps Dunbar represented SEPH in this matter by "assisting SEPH with a forbearance agreement; foreclosing the mortgage; prosecuting the deficiency action; representing SEPH in [Adam's] chapter 13 bankruptcy, in which SEPH successfully moved to annul the automatic stay; and successfully representing SEPH in a post-foreclosure ejectment action." (Doc. 20-3, ¶ 3). She further indicated she charged an "average hourly rate of $201.06" for her work and reported the following hourly rates for other legal professionals who worked on this matter:

> Allen ("Teeto") Graham, a partner, charged an hourly rate of $290.00. Ashley E. Swink, formerly of counsel, but no longer employed with Phelps Dunbar, charged an hourly rate of $295.00. Our paralegals, Rachel DeHora and Vicky Lundy, charged a rate [of] $130.00 per hour. These hourly rates were usual and customary for these individuals when handling similar matters[ ] and are in the range of usual and customary [rates] for employees working at the Mobile office of Phelps handling similar matters.

*Id.* at ¶ 4. Ms. Mashburn-Myrick did not, however, provide any details about her or the others' professional experience or other relevant details.

In his affidavit, Mr. Fleming indicated he has practiced law in the Mobile, Alabama area since 1971 and has extensive experience in civil litigation before federal courts. (*See* Doc. 20-5, ¶ 3). Based on his familiarity with the firm's reputation, and those of the individuals in question, Mr. Fleming opined, "[t]he hourly rates charged by the attorneys and paralegals of Phelps Dunbar are comparable to or lower than the rates charged for similar services in Mobile and Baldwin Counties by attorneys of similar experience." *Id.* at ¶ 9. He pronounced the number of hours billed "were reasonably and necessarily expended" and endorsed the expenses as "reasonable expenditures . . . and necessarily incurred." *Id.* at ¶¶ 10–11. Mr. Fleming charges an hourly rate of $275 and billed Phelps Dunbar for one hour of work to review the file. *Id.* at ¶ 13.

### 1. Reasonable Rate

As the party requesting the fees, SEPH has the burden of supplying the Court with specific and detailed evidence from which the Court can determine the reasonable hourly rate for the work performed by its attorneys and paralegals. *Barnes*, 168 F.3d at 427. Unfortunately, other than designating attorneys as "partner," "counsel," and "of counsel," SEPH has not presented any evidence indicating the level of experience or training possessed by any of the billing individuals, making difficult the Court's own

determinations of reasonableness. This Court, however, has previously found Graham's and Swink's[4] billable rates of $250 per hour and $225 per hour, respectively, to be reasonable and appropriate when performing work for the same client. *See SE Prop. Holding, LLC v. 145, LLC*, No. 10–521–KD–B, 2012 WL 6681784, at \*4 (S.D. Ala. Dec. 21, 2012); *see also Garrett Investments, LLC v. SE Prop. Holdings, LLC*, 956 F. Supp. 2d 1330, 1340 (S.D. Ala. 2013) (finding the same rates to be reasonable). Based upon the Court's consideration of the opinions of Ms. Mashburn-Myrick and Mr. Fleming, its own knowledge and experience, and the factors enunciated, *supra*, the Court finds these rates to be reasonable in this case as well.

The Court further finds Ms. Mashburn-Myrick's rate at an "average" of $201.06 per hour to be unreasonable. "In the past, this Court has awarded the rate of $150 per hour for associates' time when their expertise is indeterminate." *See SE Prop. Holdings*, 2012 WL 6681784 at \*4. Because SEPH (and Ms. Mashburn-Myrick herself) provided no evidence of her expertise and experience, the Court finds she is due to be awarded a billable rate of $150 per hour.

Further, "[w]ork that may be appropriately performed by paralegals and billed to a client or a losing party includes 'factual investigation, including locating and interviewing witnesses; assistance with depositions,

---

[4] The billing statements reference an attorney charging $295 per hour as "A. Fincher." (*See* Doc. 20-4). The Court construes Fincher's charges to be those of Ms. Swink, based on Ms. Mashburn-Myrick's affidavit testimony.

interrogatories, and document production; compilation of statistical and financial data; checking legal citations; and drafting correspondence.'" *Id.* (citing *Missouri v. Jenkins ex rel. Agyei*, 491 U.S. 274, 288 n. 10 (1989)). SEPH requests $130 per hour for paralegals' work on this matter, but the Court finds that rate to be unreasonable. "In several recent cases, this Court has found $75/hour to be a reasonable rate for paralegal work." *Id.* (citing case law from this district). As SEPH has not stated the paralegals' level of experience and has not demonstrated they possess qualifications that merit high rates, which have been approved in the past, the Court finds the paralegal time in this case will be billed at $75 per hour.

### 2. Recoverable Time

SEPH seeks recovery of time billed from August 2015 through February 2017. (*See* Doc. 20-4). In general, the majority of the work performed and time expended was not overly excessive or redundant and was adequately supported by the descriptions in the invoices. After studiously reviewing the billing statements submitted, however, the Court has discovered a number of billing entries that are "excessive, redundant, or otherwise unnecessary," as well as paralegal entries that appear to be clerical or secretarial in nature. For example, the invoices indicate Mr. Graham and Ms. Swink invoiced time to review and revise Ms. Mashburn-Myrick's and paralegals' work. (*See, e.g.*, Doc. 204, pp. 3, 13, 27–29, 37–39, 46–47, 65). They also reflect conferences among counsel for routine matters and

15

redundant billing for the attorneys to receive and review filed documents. *See id.* at 8–9, 11, 23, 33, 43, 47, 50. Further, the billing statements reference review of the damage caused by Adams to the property, as well efforts to repair the property before the foreclosure sale. *See id.* at 53, 56. While these efforts might have been necessary in the furtherance of that sale, they are not properly billed in this matter.

Upon consideration of the foregoing, and acknowledging the reduced hourly rates for the attorneys and paralegals, the Court finds an across-the-board reduction of 15% in this action is appropriate. *See, e.g., Garrett Investments*, 956 F. Supp. 2d at 1343–44; *SE Prop. Holding, LLC v. Green*, 2013 WL 790902 (S.D. Ala. Mar. 1, 2013) (applying an across-the-board reduction of 15%); *Barnes*, 168 F.3d at 428 ("If fee applicants do not exercise billing judgment, courts are obligated to do it for them, to cut the amount of hours for which payment is sought, pruning out those that are excessive, redundant, or otherwise unnecessary.") (citations omitted).

*3. Calculation of the Lodestar*

In consideration of the above findings, the following amount will be awarded:

|  | Hours | Fee | Total |
|---|---|---|---|
| A. Graham | 13.8 | $250 | $3,450 |
| A. Swink | 32 | $225 | $7,200 |
| D. Mashburn-Myrick | 118.5 | $150 | $17,775 |
| R. DeHora | 14.2 | $75 | $1,065 |
| V. Lundy | 12.1 | $75 | $907.50 |
|  |  | Subtotal | $30,397.50 |
|  |  | Less 15% | $4,559.63 |
| **Total Attorneys' Fees Allowed** |  |  | **$25,837.87** |

**3. Reasonable Costs**

In support of the requests for expenses, SEPH submits the billing statements it received from Phelps Dunbar. These expenditures total $3,864.43. (Doc. 20-4). After reviewing the descriptions, the correlating billing statements, and Mr. Fleming's assessment of the necessity and reasonableness of the expenditures, the Court finds the expenses to be adequately documented and reasonable. Accordingly, the Court approves expenses in the amount of **$3,864.43**.

**IV. Conclusion**

Upon consideration of the foregoing, judgment in the amount of **$56,931.84** for deficiencies on the Loan, **$25,837.87** for attorneys' fees, and **$3,864.43** for costs, for a total of **$86,634.14**, is due to be entered against Adams. Accordingly, SEPH's motion for entry of default judgment is **GRANTED in part**.

**DONE and ORDERED** this 23rd day of March, 2017.

/s/  Callie V. S. Granade
SENIOR UNITED STATES DISTRICT JUDGE